UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CRIMINAL NO. 05-64-DCR

UNITED STATES OF AMERICA                                          PLAINTIFF

VS:             **REPORT AND RECOMMENDATION**

LARRY RAY MILLER                                                  DEFENDANT

\* \* \* \* \* \* \*

This matter is before the Court upon the defendant's motion to suppress evidence (DE #10). The government has filed a response (DE #12). An evidentiary hearing was conducted on October 6, 2005, at which the Magistrate Judge heard the testimony of Drug Enforcement Administration Task Force Officer Barry Adams. No other witnesses were presented by either party. Having read and considered the motion, response, and personally heard the testimony of Officer Adams, the Magistrate Judge makes the following proposed Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1) On May 19, 2005, Sgt. Ed Robinson of the Mt. Vernon Police Department advised DEA Task Force Officer Barry Adams (who is a Deputy Sheriff of

1

Rockcastle County) and other officers that Larry Ray Miller was involved in counterfeiting and in the illegal distribution of drugs.

2) Officer Adams and three other officers (including Sgt. Robinson) then proceeded to the defendant's residence located in Rockcastle County, Kentucky. Officer Adams knocked on the defendant's door and announced his presence. After "a couple of minutes" the defendant answered the door. Officer Adams recognized the defendant from prior contacts. He advised Miller that they were there investigating allegations or a complaint of counterfeiting. Miller immediately pulled currency out of his pocket and handed it to Adams, who in turn handed it to Detective Bryant. Adams then asked Miller if he would consent to a search of his residence, to which the defendant responded "I don't care" (which the officers interpreted as a consent to search). Adams, Bryant and Miller entered into the house and Miller sat down on a couch. Apparently the other two officers remained outside the residence.

3) Officer Adams saw Miller pull a jacket toward him on the couch and became suspicious. He asked Miller what was in the jacket, to which Miller responded "just my gun". Miller told Adams that he would retrieve the gun from the jacket pocket. Adams informed Miller that he (Adams) would retrieve same.

4) Adams looked inside the pockets of the jacket finding a pistol, two rolls of black electric tape, several baggy ties, a baggy, and black electric tape wrapped around eighteen (18) pink pills. The baggy contained a white powder which subsequently tested to be 77% pure methamphetamine in the amount of 10.942 grams. The pills were Hydrocodone. The weapon in question was a 9mm pistol.

5) To the extent that these proposed findings of fact are amplified or discussed in the following proposed Conclusions of Law, the factual portions therein are incorporated into these proposed findings of fact by reference.

## CONCLUSIONS OF LAW

The officers did not obtain a warrant to search the defendant or his residence. A search without a warrant is "*per se* unreasonable ... subject only to a few specifically established and well-delineated exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); also see *United States v. Jenkins*, 92 F.3d 430, 436 (6th Cir. 1996). However, one of those established and well-delineated exceptions is a search pursuant to voluntary consent. An "officer with consent needs neither a warrant nor probable cause to conduct a constitutional search." *Jenkins*, at 436, citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed. 2d 854 (1973).

The officers were informed by Sgt. Robinson that the defendant was engaged in distribution of drugs and counterfeiting. They reasonably could contact him to investigate the complaint. Police questioning, by itself, does not result in a Fourth Amendment violation. *I.N.S. v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984), citing *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), and *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). Also see *United States v. Erwin*, 155 F.3d 818, 823 (6th Cir. 1998) (Mere police questioning does not constitute a seizure "even when there is no reasonable suspicion that a crime has been committed ....").

Officer Adams knocked on the defendant's door and announced their presence. Shortly thereafter the defendant answered the door. Officer Adams recognized the defendant, and told him the officers were there regarding suspected counterfeiting. Almost immediately the defendant removed money[1] from his pocket and handed it to Adams who, in turn, handed it to Detective Bryant. It can hardly be argued that this brief encounter resulted in a detention under the Fourth Amendment, or that the consensual nature of the response was eliminated. *Delgado*, 466 U.S. at 216.

---

[1] The money was later determined by Detective Bryant to be legitimate (not counterfeit) currency.

Thereupon, Officer Adams asked Miller for consent to search his residence. Miller responded "I don't care"[2], which the officers interpreted as consent. At this point, the officers entered the residence, and the defendant sat on a couch. As noted in the proposed findings of fact, when Miller pulled a jacket closer to him, Officer Adams suspicioned what might be in its pockets, and so inquired of the defendant. When Miller told him "just my gun", the officer then had a second reason (officer safety) to search the jacket. *Cf. United States v. Bishop*, 338 F.3d 623 (6th Cir. 2003).

It is well-established that a warrantless search will be upheld if the defendant voluntarily consents to it. See *United States v. Van Shutters*, 163 F.3d 331 (6th Cir. 1998); *United States v. Drayton,* 536 U.S. 194, 201, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002); and *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).

Of course, the government bears the burden of demonstrating that consent was voluntarily given. *Florida v. Royer*, *supra*, 460 U.S. at 497; *United States v. Tillman*, 963 F3d. 137, 143 (6th Cir. 1992). The Supreme Court has held that the question of whether consent to search was voluntary "is a question of fact to be

---

[2]Anyone who was raised in eastern Kentucky understands this response as concurring with the request, notwithstanding the questionable grammar employed.

determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, *supra*, at 412 U.S. 227.

Here, Officer Adams' testimony is uncontroverted that the two officers did not enter the residence until the defendant consented to a search. Miller was not restrained or subject to any intimidation. During the brief questioning, the atmosphere was in no way coercive. At no time did Miller revoke his consent or limit it in any way. The government has carried its burden of showing that the defendant voluntarily consented to the search. See *United States v. Burns*, 298 F.3d 523, 541 (6th Cir. 2002). Also see *United States v. Watson*, 423 U.S. 411, 424, 96 S.Ct. 820, 828, 46 L.Ed.2d 598 (1976) (holding that the defendant had not been coerced into consenting to a search, even though he had been arrested and was in police custody at the time he consented.)

The defendant's cross-examination of Officer Adams centered on two points: 1) that the officer only informed Miller, prior to his consent, that he was suspected of counterfeiting, with no mention of drug trafficking; and, 2) that the consent was given at the front door, prior to the officers entering the residence and noticing the jacket, which was then searched and found to contain the drugs and a pistol. Apparently Miller contends that his consent was only for search of evidence of counterfeiting, and that the search of the jacket was illegal because he did not

specifically consent to its search. The Magistrate Judge has found no case law supporting these positions, nor has any been cited by the defendant. The two cases cited, *United States v. Block*, 590 F.2d 535, 541-42 (4th Cir. 1978) and *United States v. Gillis*, 358 F.3d 386, 391 (6th Cir. 2004) do not support his contentions. Both cases recite that consent to search a residence "cannot be thought automatically to extend to the interiors of every discrete enclosed space capable of search within the area." Thus, in *Block*, the owner's consent was held not to extend to her adult son's footlocker located in the bedroom in which he permanently resided. In a footnote (fn8, p541) the Court stated:

> "Obviously not every 'enclosed space within a room or other area –
> e.g., <u>pockets in clothes</u>, unsecured shoeboxes, and the like – can claim
> independent status as objects capable of search not within reach of the
> authorized search area. The rule has to be one of reason that assesses
> the critical circumstances indicating the presence or absence of a
> discrete expectation of privacy with respect to the particular object:
> whether it is secured, whether it is commonly used for preserving
> privacy, etc.'" (Emphasis supplied).

Therefore, the *Block* opinion dictates against the defendant's argument herein. The *Gillis* case merely held that a consent to search a house did not necessarily extend to a wrecked and abandoned vehicle parked in the driveway.

Again, it is emphasized that, here, Miller did not restrict his consent to a specific area of the residence, did not exclude any item (specifically his jacket)

from the scope of the search, and did not limit his consent only to counterfeiting paraphernalia. Even if he had so limited his consent, when he told the officer he had a gun in his jacket pocket, the officer had every right to look into the pockets. It was at this point that the officer found not only a pistol, but the pills and methamphetamine. *Cf.* <u>United States v. Garrido-Santana</u>, 360 F.3d 565 (6th Cir. 2004) holding that consent to search an automobile encompasses permission to search the automobile's gas tank. Even if Miller had limited the scope of the search to counterfeiting paraphernalia, a jacket pocket would be a natural place to expect to find counterfeit currency. The officers, armed with consent, could inspect and search his belongings which are capable of concealing the objects of the search. <u>Wyoming v. Houghton</u>, 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999). When the officer thus observed obvious contraband, he had a right to seize same. <u>Texas v. Brown</u>, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (Officers' knowledge and experience gave probable cause to believe a tied-off opaque balloon contained drugs).

## RECOMMENDATION

It is therefore RECOMMENDED that the motion to suppress be DENIED.

By agreement of counsel, particularized objections to this Report and Recommendation must be filed within five (5) days of the date of service of the

same or further appeal is waived. *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981), *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *affirmed*, 474 U.S. 140 (1985). Poorly drafted objections, general objections or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. See *Howard v. Secretary of Health and Human Services,* 932 F.2d 505 at 509 (6th Cir. 1991). Also by agreement, a party may file a response to another party's objection within five (5) days after being served with a copy thereof. Rule 72(b), Fed.R.Civ.P.

  This 18th day of October, 2005.

**Signed By:**
***J.B. Johnson, Jr.***
**United States Magistrate Judge**